```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**CODY TRENN,**

      **Plaintiff,**

  vs.                                      Civil Action 2:13-CV-407
                                                          Magistrate Judge King

**HERBERT H. HARKNESS,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, an inmate at the Richland Correctional Institution ("RCI"), brings this action under 42 U.S.C. § 1983 in connection with an alleged attack by defendant Herbert Harkness, a former employee of the Ohio Department of Youth Services ("ODYS"), while plaintiff was a juvenile in the custody of ODYS. Plaintiff alleges that defendant Harkness used excessive force against plaintiff in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. With the consent of the parties, *see* 28 U.S.C. § 636(c), this matter is now before the Court on *Defendant, Herbert Harkness' Motion for Summary Judgment*, Doc. No. 22 ("*Motion for Summary Judgment*"). Although plaintiff has had the opportunity to respond to this motion, which was filed on December 20, 2013, and has been advised of the consequences of his failure to respond, *Order*, Doc. No. 25, there has nevertheless been no response to the *Motion for Summary Judgment*.[1]

**I.    FACTS**

---

[1] In fact, plaintiff has taken no action in this case since the original filings.

The record reflects the following uncontroverted facts. At all times relevant to the *Complaint*, plaintiff was a juvenile in the custody ODYS at the Circleville Juvenile Correctional Facility ("CJCF"). *See*, *e.g.*, *Exhibit A*, attached to the *Complaint*; *Affidavit of Defendant, Herbert Harkness*, ¶¶ 2, 6, attached as *Exhibit A* to the *Motion for Summary Judgment* ("*Harkness Affidavit*"); *Ohio Department of Youth Services Report of Investigation*, pp. 3, 97-100 (using Clerk's pagination), attached as *Exhibit E* to the *Motion for Summary Judgment* ("*Investigation Report*"); *Affidavit of Jennifer Fears*, ¶ 8 (authenticating *Investigation Report*), attached as *Exhibit F* to the *Motion for Summary Judgment* ("*Fears Affidavit*"). Defendant was employed by ODYS at CJCF as a General Activity Therapist II ("GAT II"). *Harkness Affidavit*, ¶¶ 2, 6.[2] As a GAT II, defendant organized, supervised and participated in the daily recreational activities of detained youth. *Id*. at ¶ 3. Defendant had served as a GAT for approximately twelve (12) years. *Id*. at ¶ 2. Defendant described the training that he received during his employment:

> Because of my twelve (12) years of experience working with detained youth, and the training that I have received regarding planned youth attacks on Youth Specialists and other staff members, I would routinely sit with my back against, or closest to a wall so as to prevent, as much as possible, youth being out of my vision and thus being able to approach me from behind. When I was participating in activities with the youth I would try as much as possible to keep all youth in my field of vision and to the greatest extent possible, not permit youth to linger behind me.

*Id*. at ¶ 4. Defendant has "never been disciplined for using excessive

---

[2] Defendant has apparently now retired from ODYS. *Harkness Affidavit*, ¶ 2.

2

force against detained youth, physically abusing detained youth, inappropriate supervision, or threatening, intimidating, coercing, or using abusive language to detained youth." *Id*. at ¶ 5.

On January 18, 2011, defendant was working his usual day shift at CJCF and "was seated at a game table [in the gym] recording attendance and participation of the detained youth." *Id*. at ¶ 6. GAT II Timothy Chelikowsky asked that plaintiff be escorted out of the gym. *Id*. As plaintiff walked by defendant, plaintiff said, "That's why I fucked your Mama." *Id*. According to defendant,

> I was taken aback and surprised by Cody Trenn's comment because in the past I had not had any previous problems with him and I had not played any role in him being asked to leave the gym. As he passed by after making the comment I asked him "What did you say?" Youth Cody Trenn did not respond at that time and kept walking towards the exit door. Once Cody Trenn left the gym with the Youth Specialist I returned to my attendance and participation records.

*Id.* at ¶ 7.

Defendant describes what happened next:

> Within a few seconds, I saw in my peripheral vision someone approaching my position at the table. I then saw this person lean towards me from a standing position to my right. I then heard this person say "I said, that's why I fucked your Mama," and upon hearing that comment and looking up I saw that it was Cody Trenn. Cody Trenn had obviously[,] against orders, re-entered the gym and had immediately approached me. As soon as I saw that it was Cody Trenn, together with his comment repeating what he had said to me seconds earlier upon his first exit from the gym, I was concerned that he was about to assault me.

*Id*. at ¶ 8.

Defendant's right hand made contact with the left side of plaintiff's face. *Id*. After defendant stood up and moved around the

3

table "to keep distance between Cody Trenn and myself, I used verbal strategies to de-escalate the situation and to attempt to gain Cody Trenn's compliance with orders that he remain outside the gym. There were no further disturbances between Cody Trenn and myself and Cody Trenn then left the gym without any additional intervention." *Id.* at ¶ 11. According to defendant, this encounter with plaintiff "lasted no more than a few seconds[.]" *Id*.

Plaintiff submitted a grievance on the day of the incident. *Investigation Report*, pp. 97-100. However, defendant explains that plaintiff later apologized:

> Cody Trenn approached me in my office in the gym during a recreational period and apologized for making those comments to me. We had a brief discussion about why he should not make such comments to others. Thereafter I continued supervising Cody Trenn's recreational activities and had no further problems between us.

*Id*. at ¶ 13.

On April 30, 2013, after plaintiff had been released from ODYS confinement and admitted to the custody and control of the Ohio Department of Rehabilitation and Correction ("ODRC"), plaintiff filed this action against defendant in his individual capacity. *Complaint*, Doc. No. 4, p. 1, ¶ 6.[3] Plaintiff seeks "[a]n award of non-economic damages, including pain and suffering and emotional distress, in an amount to be determined by a jury; [a]n award of punitive damages in an amount to be determined by a jury; [a]n award of attorney's fees (if applicable) and costs permitted by law; and [a]ll other relief

---

[3] The *Complaint* is not verified.

4

available under law or equity under the circumstances." *Id*. at 5.

## II. STANDARD

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at

5

323.  Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'"  *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Instead, the non-moving party must support the assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *Glover,* 284 F. Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  *Id. See also* Fed. R. Civ. P. 56(c)(3).

6

**III. DISCUSSION**

Plaintiff, a juvenile at the time of the events giving rise to this action, alleges that defendant violated his rights under the Eighth and Fourteenth Amendments when defendant struck plaintiff's face on January 18, 2011. This Court has previously considered whether the Eighth Amendment or Fourteenth Amendment applies to a claim for excessive force raised by a plaintiff who was a juvenile in the custody of ODYS at the time of the alleged use of excessive force:

> [Such a plaintiff] was presumably committed to the custody of ODYS after being adjudicated delinquent as the result of having committed an act that, if committed by an adult, would constitute a felony. See *J.P. v. Taft*, 439 F.Supp.2d 793, 796 n.3 (S.D. Ohio 2006). His status falls somewhere in between an adult prisoner and a pretrial detainee. *Compare Nelson v. Heyne*, 491 F.2d 352, 354-55 (7th Cir. 1974) (applying Eighth Amendment analysis to supervised beatings in juvenile reformatory) with *K.M. v. Alabama Dep't of Youth Services*, 360 F. Supp.2d 1253, 1258-59 (M.D. Ala. 2005)(juvenile detainee's right to bodily integrity properly analyzed under due process clause of Fourteenth Amendment) and *Jackson v. Johnson*, 118 F. Supp.2d 278, 287 (N.D.N.Y. 2000)(Eighth Amendment ban on cruel and unusual punishment inapplicable where plaintiff was placed in state custody following adjudication as juvenile delinquent). However, it is not really necessary to choose between these standards given their similarity in application.

*Gregg v. Ohio Dep't Youth Servs.*, 661 F. Supp.2d 842, 854 (S.D. Ohio 2009). *See also Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("Under either constitutional guarantee, an excessive-force claimant must show something more than *de minimis* force."). In so concluding, this Court applied the standard for analyzing excessive force claims under the Eighth Amendment. *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). The Court sees no reason to depart from this analysis in this case.

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. U.S. Const. amend. VIII. An Eighth Amendment claim of excessive force by a prison official contains both an objective and a subjective component. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). The state of mind of the prison official is the focus of the subjective component. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Under this component, a court must examine "'whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). This component requires consideration of such factors as "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)) (internal quotation marks omitted). "Courts may also consider the circumstances as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id*. (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

In the case *sub judice*, defendant admits that he used force against plaintiff. *Harkness Affidavit*, ¶¶ 8-14. As recounted *supra*, shortly before this physical contact, plaintiff had been escorted out of the gym, had used profanity against defendant and had re-entered

the gym without permission. *Harkness Affidavit*, ¶¶ 6-8. Plaintiff approached defendant, who was still seated, and repeated the profanity. *Id*. at ¶ 8. In reacting to what he believed to be an imminent assault from plaintiff, defendant averred that he instinctively

> extended my right arm with an open hand and thrust it in Cody Trenn's direction in order to move him away from me. My right hand made contact with the left side of Cody Trenn's face. I stood up and moved away from the table creating more distance between Cody Trenn and [me].

*Id.*[4] Defendant emphasizes that his

> reaction was intended to keep Cody from advancing further into my space, and unfortunately my extended right hand did make contact with the left side of Cody Trenn's face. It was never my intent to cause or attempt to cause physical harm to Cody Trenn, and the inadvertent contact with Cody Trenn's face caused no injury.

*Id*. at ¶ 10. *See also id.* at ¶ 11 ("[M]y instinctive reaction in extending my right arm towards Cody Tree was a defensive action only[.]").

The record before this Court contains no evidence that defendant used force "maliciously and sadistically to cause harm." *See*, *e.g.*, *Williams*, 631 F.3d at 383 (internal quotation marks omitted). Rather, defendant's use of force was justified by plaintiff's misconduct and reflected a legitimate concern for restoring order. Defendant used no

---

[4] The Court has reviewed the security camera video in the gym taken on January 18, 2011, which was submitted with the *Motion for Summary Judgment*. *See Exhibit D* (filed manually). The Court finds that this video of the incident, which is taken from a distance and not very clear, is inconclusive; it does not clearly show the contact between plaintiff and defendant. *See*, *e.g.*, *Exhibit D* at 15:26:09. *See also Harkness Affidavit*, ¶ 9 (identifying the portion of the video capturing the interaction and admitting that the video "does not clearly show" the physical contact).

9

more force than was necessary.  According to defendant, the incident caused no injury to plaintiff, *Harkness Affidavit*, ¶ 10, an uncontroverted fact that underscores the conclusion that defendant did not use force maliciously and sadistically.  The evidence of record establishes that defendant's use of force was proportionate to the danger posed by plaintiff's misconduct and was applied in a good faith effort to restore discipline.

The existence of certain statements contained within the *Investigation Report* does not militate a different result.  Defendant acknowledged that he told an investigator examining the January 18, 2011 incident that he (defendant) "hit Cody in the mouth."  *Harkness Affidavit*, ¶ 10.  *See also Investigation Report*, pp. 5, 19, 26.  Defendant now explains that any physical contact between him and plaintiff was inadvertent and was merely the result of an instinctive gesture intended to create distance from plaintiff.  *Id.* at ¶¶ 8, 10, 14.  This sworn explanation is uncontroverted.  The *Complaint*, which alleges that defendant punched plaintiff with a closed fist, ¶ 12, is unverified.  Moreover, plaintiff has not responded to or otherwise offered any evidence in opposition to the *Motion for Summary Judgment*.[5]  Finally, there is no evidence that any of the statements contained in the *Investigation Report* were made under oath.  Although the *Investigation Report* has been authenticated, *Fears Affidavit*, ¶ 8, the Court may not consider unsworn, inadmissible statements at the summary

---

[5] Indeed, having filed nothing in this action since the initial filings in April 2013, it appears that plaintiff may have abandoned the litigation.

10

judgment stage.  Fed. R. Civ. P. 56(c), (e).  *See also Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("'[A] court may not consider unsworn statements when ruling on a motion for summary judgment.'") (quoting *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 968-69 (6th Cir. 1991)).  Accordingly, unsworn statements contained in the *Investigation Report* do not alter this Court's conclusion that defendant's use of force was warranted under the circumstances presented on January 18, 2011 and not undertaken maliciously and sadistically to cause harm. [6]

Having concluded that the subjective component has not been met, the Court now considers whether plaintiff has satisfied the objective component of his claim, which requires that the force be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  This component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id*. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id*. at 9-10 (quoting *Whitley v. Albers*, 475

---

[6] The *Investigation Report*'s conclusion that defendant used "inappropriate force" against plaintiff, *id*. at 22-23, is likewise insufficient to create a genuine issue of material fact as to the subjective component.  As discussed *supra*, the investigator relied on unsworn statements, which are inadmissible at this stage of these proceedings.  Moreover, the investigator's conclusion that "inappropriate force" was used is not tantamount to a finding of a violation of the Eighth Amendment's prohibition against excessive force.

11

U.S. 312, 327 (1986)).  *See also Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (noting that *Hudson* requires courts "decide excessive force claims based on the nature of the force rather than the extent of the injury").

Here, the objective component of plaintiff's claim has not been satisfied. Defendant's sworn statement that his inadvertent contact with plaintiff's face resulted in no injury, *id*. at ¶ 10, is uncontroverted.  Although the *Investigation Report* refers to plaintiff's complaint of a "slightly puffed" lip that bled on the inside, *id*. at 6, 30, the report also indicates that plaintiff himself believed that he "was not quite injured[,]" that there were no visible signs of injury following the incident and that plaintiff declined offers of medical help.  *Id*. at 3, 6, 66, 81, 90.  Moreover, as discussed *supra*, those statements are unsworn and may not be considered on summary judgment.  There is no evidence that defendant's use of *de minimis* force was "repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 9-10 (internal quotation marks excluded).

In short, the uncontroverted evidence establishes that defendant is entitled to summary judgment on plaintiff's claim.

**WHEREUPON**, *Defendant, Herbert Harkness' Motion for Summary Judgment*, Doc. No. 22, is **GRANTED**.  The Clerk is **DIRECTED** to enter summary judgment in favor of defendant and against plaintiff.


February 18, 2014                         *s/Norah McCann King*
                                  Norah M<sup>c</sup>Cann King
                                  United States Magistrate Judge